| | | |
|---|---|---|
| **TERRY BRENT FOX,** | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **ALEXANDER COUNTY,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendant Alexander County's Motion for Summary Judgment and Memorandum in Support (Document # 32), filed April 6, 2009; Plaintiff's Response (Document #40), filed May 8, 2009; Defendant's Reply (Document # 41), filed May 20, 2009; Plaintiff's Motion for Leave to File Surreply and Surreply (Document # 42), filed June 4, 2009; Defendant's Response in Opposition to Plaintiff's Motion for Leave to File Surreply (Document # 43), filed June 9, 2009; and Plaintiff's Reply in Favor of Surreply (Document # 44), filed June 22, 2009. Subject matter jurisdiction in this case is based on federal question jurisdiction as Plaintiff alleges, among other things, a violation of the Age Discrimination and Employment Act. This matter is now ripe for disposition.

## BACKGROUND

This is an age discrimination action against Alexander County filed under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Employee Retirement Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"), along with a supplemental state claim arising out of the Plaintiff's demotion from his supervisory role with the Alexander County

1

Emergency Medical Services ("EMS") on April 18, 2006.

On April 3, 2009, the parties stipulated to the dismissal of Russell Greene ("Greene"), Alexander County Emergency Management Services Director, from the Amended Complaint as well as dismissal of the second claim for relief: ADEA violation alleging failure to hire Plaintiff as a supervisor in July 2006 and July 2007; third claim for relief: defamation; fifth claim for relief: breach of contract by failing to comply with the Alexander County Personnel Policy "Personnel Policy"); sixth claim for relief: breach of contract by promissory estoppel; and seventh claim for relief: violation of the North Carolina Retaliatory Employment Discrimination Act.

The claims that remain are: first claim for relief: ADEA violation alleging the Plaintiff was unlawfully demoted because of his age on April 18, 2006; fourth claim for relief: violation of ERISA as a result of the Plaintiff's demotion; and eighth claim for relief: violation of the North Carolina Equal Employment Practices Act ("NCEEPA").

## Facts

Plaintiff Terry Fox ("Fox") has been employed by Alexander County Emergency Medical Services ("Alexander County") since July 1983. Fox was promoted on more than one occasion, and from 1988 until the events complained of in this case, Fox was an EMS Supervisor with leadership responsibility over the other members of his paramedic team. From 1988 until 2005, Fox performed his duties well and never received a written warning.

Defendant Alexander County Emergency Medical Services, is an employer who provides medical services, employs more than twenty regular employees and is located in the state of North Carolina. Dr. Joel Inman ("Dr. Inman") is the medical director for Alexander County. Richard French ("French") is the county manager for Alexander County. Sandra Gregory ("Gregory") is the Human Resources director for Alexander County. Bradley Earp ("Earp") was the Emergency

Services Director over EMS and oversaw the day to day operations of EMS until May or June of 2005.

In either May or June of 2005, Russell Greene ("Greene"), formerly the Alexander County Fire Marshal, replaced Earp and became the new Alexander County Emergency Services Director. This position combined the office of fire marshal with supervision of the EMS department. Soon thereafter, in August of 2005, Earp was injured in a serious automobile accident and was out of work for almost five months. In Earp's absence, Russell Greene took over the disciplinary duties for EMS.

When Greene became Emergency Services Director, there were two supervisors, Terry Fox and Connie Meredith, and an interim supervisor, Jeffrey Sigmon, whom Greene promoted to permanent supervisor. In May of 2005, Greene held a meeting with his supervisors, during which time Greene told them, "If you don't think you can be a supervisor, there's the door." Fox Dep. 91-92, Nov. 14, 2008. Bradley Earp, present at the meeting, interpreted the statement to mean "do your job or we'll get somebody who can do it." Earp Dep. 44-46, Jan. 16, 2009.

Until October 2005, Fox did not receive any written warnings or write-ups from his employer. In October of 2005, however, Fox received a written warning from his supervisor Greene, for unsatisfactory job performance as part of his response to a call on October 26, 2005. Fox appealed this written warning pursuant to the personnel policy. The warning, however, was subsequently removed from his personnel file. A letter was then sent to Fox informing him that the warning was being dropped because of insufficient documentation to support the grievance. Fox had no other performance issues until March 25, 2006.

*Alexander County EMS Policies*

Alexander County EMS has several policies for responding to calls and answering calls. One

such policy relates to the response time to the scene of a call, or "en-route time." The standard for en-route time is three minutes between the hours of 11 p.m. to 7 a.m. and one minute during the rest of the day. This policy exists to ensure promptness in responding to calls. There is also a policy that limits "on scene" time to twenty minutes. The North Carolina College of Emergency Physicians adopted a standard that "scene time should be ten minutes or less . . . [and] justification for scene time greater than 20 minutes should be documented." Inman Dep. 32:11-22, Jan. 13, 2009.

*The Winter Haven Call*

On Saturday March 25, 2006, a call was received by 911 dispatch between 6:20 a.m. and 6:30 a.m. asking EMS to respond to Winter Haven Drive, located only 4/10 of a mile from the EMS station. The call involved an unresponsive individual. Because of the serious nature of the call, it was documented as a "priority one call," the highest priority.

Fox was asleep when the call came over the loudspeaker at the EMS office at 6:29 a.m. The plaintiff, along with his partner Erik Smith ("Smith"), responded to the call. There is some discrepancy as to the time it took Fox and Smith to respond to the call. The computer assisted dispatch report ("CAD") indicated that the en-route time to Winter Haven Drive was three minutes and seven seconds.[1] The patient care report, however, indicated that the en-route time was six minutes. Additional efforts at timing the call were made, resulting in more discrepancies as to how long it took Fox and Smith to arrive on the scene. Despite the differences in timing the call, no one timed the response at under three minutes.

When Fox and Smith arrived on the scene at 6:33 a.m., first responder Doug Bowman from the Taylorsville Police Department was already present. The team attempted to arouse the patient

---

[1] The CAD report is the "official documentation" for en route times and is not alterable after it has been issued.

with no success.  Next, they took the patient down the hall, and he vomited which cleared his airway.  Fox began to gather information from the patient's parents and soon thereafter, a second team of paramedics arrived on the scene.

As the EMS crew exited the home with the patient, the patient began vomiting several times. Although the patient was not an RSI, or rapid sequence induction, candidate when Fox and Smith arrived on the scene, the patient's breathing condition worsened and Smith suggested performing RSI. All agreed that RSI needed to be performed in order to open up the patient's airway.  Because Smith was not certified by Alexander County to perform RSI, Fox performed the RSI.

From 7:07 to 7:24, the RSI drugs were administered.  The first drug for the RSI procedure was administered after the crew had been on the scene for over thirty minutes.  Once the RSI was completed, the patient was intubated, and the patient was taken to the hospital, and suffered no adverse consequences as a result of the treatment he received.

*The Subsequent Investigation of the Winter Haven Call*

Fox's Supervisor, Greene, received a complaint the next Monday from an EMS dispatcher that it took EMS too long to respond to the Winter Haven Call. Because of the complaint, Greene began an investigation of the Winter Haven call.  When Greene listened to the tape, the caller was heard yelling "where are they?" numerous times.  After Greene listened to the tape, he contacted Gregory because he had some questions about the call.  Gregory listened to the tape, and her first instinct was that the EMS employees involved in the call should be fired.

On March 31st, a meeting was called where Gregory, Earp, and Greene met with Plaintiff, his partner Eric Smith, and Tommy Church, the senior EMS employee on the second crew.[2]

---

[2] Greene did not interview Nate Baumgarner, Church's partner, because Green felt that Baumgarner was too new to offer any insight into the call.  Greene Dep. 169: 12-25; 170: 1-2,

Greene asked each individual at the meeting to time the Winter Haven call. Every individual timed the call over 3 minutes. Fox admitted that the Winter Haven call should have been handled quicker than 49 minutes. Greene then asked each employee to fill out a "Request for Response," which asked the employees questions about the call and instructed them to provide written documentation about the call by April 3, 2006.

Greene also asked Earp to review the call and documentation for the Winter Haven call. After reviewing the call and documentation, Earp expressed concerns over the amount of time spent on the scene, the failure to timely conduct the RSI procedure, and Plaintiff's failure to oversee the patient's care. Upon reviewing the file and tape of the call, Earp recommended that Fox be given a two day suspension in a written letter dated April 4, 2006. Earp did not believe that Fox's conduct on the call rendered him unfit to be a supervisor, nor did Earp believe that Fox had engaged in "grossly inefficient job performance" or "unacceptable personal conduct which would have justified immediate termination or demotion under Article 3 of Defendant's disciplinary procedures." Earp Dep. 151:16-152:6. Rather, Earp believed only that Fox had demonstrated inefficiency within the meaning of Article 3, which requires issuances of written warning before demotion or termination.

On April 5, in accordance with the Personnel Policy, the Plaintiff was suspended with pay pending the outcome of the investigation.

*The Decision to Demote Plaintiff*

Greene and Gregory informed French that based on their investigation, they were

---

Dec. 22, 2008. Baumgarner later attested that he believed the dispatch and time en-route were appropriate and that "the call could not have gone better based upon the circumstances" and that Fox's "actions as supervisor were appropriate and professional on the call in general." Pl.'s Ex. 27. The volunteer firefighters on the scene, Doug Bowman and Adrian Foster, were also not interviewed.

considering taking disciplinary action against the Plaintiff. French proposed that they meet with Dr. Inman to request that he review the Winter Haven call.

On April 6,2006, Greene asked Dr. Inman to review: (1) the 911 tape, (2) Gregory's notes from the interviews with Fox, Smith, and Church, (3) written responses from Fox, Smith, and Church, and (4) Earp's letter. Dr. Inman timed the call at over four minutes. After reviewing the file, Dr. Inman wrote Greene expressing concern about: (1) the en route time, (2) the on-scene time, and (3) "the perceived role of Terry Fox on the scene." Inman Dep. 126:3-20.

On April 10, Greene, Gregory, Earp and Inman met and discussed the Winter Haven call. Once again, Dr. Inman expressed concern about the amount of time it took Fox to decide to perform the RSI procedure and expressed concern that Fox showed no sense of urgency in responding to the Priority 1 call. After discussing the events regarding the Winter Haven call, the group recommended that Fox be demoted from his supervisory role.

Gregory and Greene met with French and discussed their decision to demote the Plaintiff. French agreed with the recommendation to demote Plaintiff for grossly inefficient job performance under Section 5 of the Personnel Policy.

Also on April 10, 2006, Fox met with Green and was issued a "pre-disciplinary conference letter" that Greene was proposing his demotion for "unacceptable job performance" under Article 5. The letter listed five bullet points justifying the demotion: (i) that the Call was directly across the street and response was excessive without explanation; (ii) the length of time on scene being unacceptable; (iii) failing to take charge of the scene and make necessary decisions while on scene; (iv) delaying the decision to perform RSI after it was brought to his attention; and (v) that he contacted Earp for information about the suspension after being told to direct questions to French or Gregory. Pl.'s Ex. 45.

Plaintiff was thereafter demoted on April 18, 2006. Upon delivering the demotion letter to Fox, Greene allegedly told Fox that there were reasons for demotion not disclosed in the demotion letter.[3] On April 18, 2006, a letter was sent to Fox informing him of his demotion, effective April 28, 2006.

After Plaintiff was demoted, Doug Gillespie, an EMS training officer who was 32 years-old, assumed the Plaintiff's role as supervisor. That same day, EMS supervisor Connie Meredith, also over forty years of age, was issued a pre-disciplinary conference letter. Meredith was ultimately demoted from her job as EMS supervisor for unsatisfactory job performance and being unprofessional with first responders on the radio and in person. Tommy Johnson, who was over forty years old, was hired to replace Connie Meredith.

*Plaintiff Appeals his Demotion and Defendant's Subsequent Response*

On or about May 9, 2006, Fox appealed his demotion to French pursuant to the Personnel Policy. After he filed his appeal, Fox met with Dr. Inman and Greene to discuss the medical care rendered on the scene. Upon receiving the Fox's appeal, French met with Gregory about the investigation she helped conduct with Greene and Earp. French also asked Dr. Inman for his assessment of the call. In a letter dated May 17, 2006, Dr. Inman informed French that he agreed with the decision to demote Fox. French denied Fox's appeal the same day.

Fox filed a complaint with the EEOC for age discrimination on August 29, 2006. As such, charges against Alexander County alleging age discrimination were timely filed with the Equal Employment Opportunity Commission and the North Carolina Civil Rights Commission and more than 60 days have elapsed since filing of the charges. Fox brought an action within 90 days after

---

[3] Greene allegedly told Fox "what's contained in this letter is not what this is about but what I need you to do is sit back, be quiet [sic], and be professional." Pl.'s Ex. 33 ¶ 16.

the date of receipt of a Notice of Right to Sue from the Equal Employment Opportunity Commission. Alexander County may be sued pursuant to the State Employee Federal Remedy Restoration Action, N.C. Gen. Stat. § 143-300.35 which waives sovereign immunity and allows state employees to sue under the Age Discrimination in Employment Act.

Subject matter jurisdiction in this case is proper pursuant to federal question jurisdiction as Fox alleges violations of the ADEA and ERISA.

## II. DISCUSSION

### A.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. Anderson, 477 U.S. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). However, the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Anderson, 477 U.S. at 249-50. Thus, summary judgment is proper where "the facts and the law will reasonably support only one conclusion." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quotation omitted).

**B.     THE ADEA CLAIM**

The heart of Plaintiff's argument is that he was demoted because of his age.  The ADEA makes it "unlawful for an employer . . . to discharge an individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).  A Plaintiff can establish a violation of the ADEA by putting forward circumstantial evidence of discrimination in accordance with the framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973) and its progeny.  Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004).  Accordingly, this Court will analyze Plaintiff's claim under the burden shifting scheme of McDonnell Douglas.

The burden-shifting scheme of proof established in McDonnell Douglas requires an employee to first establish a *prima facie* case of discrimination by a preponderance of the evidence. In order to establish a *prima facie* case of unlawful age discrimination, a plaintiff must show that (1) he is a member of the protected class; (2) his employer took an adverse employment action against him; (3) he was performing his job to the legitimate expectations of his employer; and (4) he was replaced by a substantially younger employee.  Dugan v. Albermarle County School Board, 293 F.3d 716, 720-21 (4th Cir. 2002); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).  If Plaintiff is able to make a sufficient showing on these elements, the burden then shifts to the government to articulate a legitimate, non-discriminatory reason for the adverse action.  See Hill, 354 F.3d at 285.  Next, if the government satisfies that burden, the presumption of discrimination created by the *prima facie* case disappears from the case. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006). The burden then shifts to the Plaintiff, who must show by a preponderance of the evidence that the defendant's proffered reason is pretextual. Evans v.

Tech Applications & Serv. Co., 80 F.3d 957, 959 (4th Cir. 1996) citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Ultimately, and at all times during the McDonnell Douglas framework, the burden of proving age discrimination rests with Plaintiff. See Mereish, 359 F.3d at 334.

### A. Plaintiff's *Prima Facie* Case

There is no dispute that Fox is able to meet three of the four elements of his *prima facie* case: that he is in a protected class, that adverse employment action was taken against him, and that he was replaced by a substantially younger employee. Alexander County contends, however, that Fox cannot demonstrate that he was performing at a level that met Alexander County's expectations when he was demoted. Fox disagrees, arguing that at the time of his demotion he was in fact meeting his employer's expectations and, alternatively, that any reason stated by Alexander County for his demotion was merely a pretext for discrimination. Whether Fox can "point to evidence from which a rational factfinder could conclude at the time of the termination that she was meeting her employer's legitimate job expectations," is a close call in this case. See Tarver v, Winter, 535 F. Supp. 2d 565, 570 (E.D.N.C. 2008). Though a close call, Fox must simply present evidence which creates a genuine issue of material fact as to whether he was meeting Alexander County's expectations at the time of his demotion. Ruff v. Target Stores, Inc., 226 Fed. App'x. 294, 301 (4th Cir 2007) (holding that a plaintiff who presents evidence creating a question of fact satisfies the initial burden). Recognizing the Supreme Court's proclamation that the McDonnell Douglas *prima facie* case "was never intended to be rigid, mechanized, or ritualistic," Furnco Const. Corp. v. Waters, 438 U.S. 547, 577 (1978), the court finds that the Plaintiff has met the burden of establishing a *prima facie* case of age discrimination. See also Cupples v. Amsan, LLC, No. 3:)4-cv-

574, 2007 WL 1075178, * 6 (March 30, 2007 W.D.N.C.)(unreported) (noting the danger of conflating the first and third stage of the <u>McDonnell Douglas</u> analysis when the parties contest whether an employee is meeting legitimate expectations).

Alexander County argues that Fox cannot establish a *prima facie* case of age discrimination because he is unable to demonstrate that he was performing at the level that met Alexander County's expectations. In support of this argument, Alexander County points to a statement made by Dr. Inman where, in referring to the Winter Haven call, Dr. Inman stated that "Terry did not take charge of the situation as a supervisor should have." Inman Dep. 135:15-16. Alexander County provides further support for its position by citing Earp's statement that Fox and another supervisor Connie Meredith had become complacent in their job duties. Earp Dep. 166:6-14. Alexander County also argues that Fox did not meet its expectations because Fox failed to complete online training classes and people complained about his speeding and smoking cigarettes in the EMS truck. Finally, Alexander County urges this court to focus on the employee's performance at the time the employment action occurred, <u>Holtz v. Jefferson Smurfit Corp.</u>, 408 F. Supp. 2d 193, 204 (M.D.N.C. 2006), and find that Fox's alleged deficiencies on the Winter Haven call would preclude him being able to establish that he was meeting Alexander County's expectations. Noticeably missing from Alexander County's argument, however, is any previous documentation or written warnings given before the Winter Haven call that would alert Fox to the fact that he was not meeting the expectations of his employer. <u>See</u> <u>e.g.</u>, <u>Warch</u>, 435 F.3d at 515 (holding plaintiff failed to make a prima facie case where "OCIC reprimanded Warch based on concrete, specific observations and accompanied its reprimands with explicit instructions on how to improve."); <u>Riddick v. MAIC, Inc.</u>, No.: JKS 09-33, 2010 4904681, * 5 (D. Md.)(unreported) ("[Plaintiff] did not create a genuine dispute by showing isolated instances of above average performance because the Defendant has

provided considerable evidence of the plaintiff's repeated failures and negative performance.").

"When an employer asserts that the job expectation prong of a plaintiff's *prima facie* case has not been met, an employee is not prohibited from countering this assertion with evidence that demonstrates or creates a question of fact as to whether the employer's expectations are not, in fact, legitimate." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 517 (2006). In such instances, if application of meeting the employer's expectations prong were to prevent an otherwise meritorious claim, a plaintiff may demonstrate that the employer's expectations were not legitimate. Id. Such an instance is present in this case.

Fox contends he has met his prima facie case, or at least created serious factual questions as to whether Alexander County's expectations were indeed "legitimate." In support of his argument that Alexander County's expectations were not "legitimate," Fox argues that: (1) a double standard was applied to Fox with respect to the en-route time, and (2) Greene's statement to Fox when handing Fox the demotion letter is further evidence of Alexander County's discriminatory animus against Fox.

Fox argues that a jury could reasonably find pretext because other shift supervisors and paramedics had en route times well in excess of the guidelines and were not even investigated, let alone demoted or terminated. Essentially, the gravamen of this argument is that the expectations Alexander County had for Fox were different from the expectations it had for other Alexander County EMS employees. As evidence of this claim, Fox points to a chart that lists 26 instances for February 2006 when another supervisor's shift had excessive en route times (Greene Dep. Vol. II 87-91; Exs. 33 ¶7 & 55) and testimony from Bradley Earp saying that if Alexander County wrote up or demoted paramedics on every truck that was over the guidelines, without explanation,

Alexander County would have "nobody working." Earp Dep. 92-93.

Next, Fox argues that a reasonable juror could find that Alexander County's stated reasons for demoting Fox are not "legitimate" because of the statement Greene made to Fox when he handed Fox the demotion letter. Fox argues that Greene's statement "what's contained in this letter is not what this is about but what I need you to do is sit back, be quiet [sic], and be professional," is evidence that the reasons for demotion listed in the letter were nothing more than a pretext and not the real reason for Fox's demotion.

In analyzing whether Fox has met his burden of establishing a *prima facie* case, this court finds the present case strikingly similar to the situation presented in <u>Huang v. Guitierrez</u>, N08-2882, 1010 WL 93274 at \*6 (D. Md. Jan. 5, 2010)(unreported), where the court found that the plaintiff established a prima facie case under the <u>McDonnell Douglass</u> framework. Important to the court in <u>Huang</u> was the absence of any allegation that the terminated employee, a doctor, committed any egregious violations of the employer's expectations. <u>Id.</u> At \*7. The court also found that two warnings and one faulty performance allegation failed to overcome plaintiff's strong rebuttal evidence, which included the employer's admission that other employees were not terminated for similar deficiencies. <u>Id.</u> Similar to <u>Huang</u>, the reasons stated for Fox's demotion do not rise to the level of an egregious violation. Also similar to <u>Huang</u>, is the absence of prior warnings and inadequate performance evaluations alerting plaintiff to the fact that he was failing to meet his employer's expectations. The testimony from Bradley Earp regarding the implications of writing up or demoting every paramedic that had an excessive en route time, like the admission of the employer in <u>Huang</u> that other employee's were not terminated for similar deficiencies, provides further support to create a question of fact as to whether Alexander County's expectations were

legitimate. Finally, the statement that Greene allegedly made to Fox when handing Fox the demotion letter also serves to create a question of fact regarding whether Alexander County's expectations were legitimate.

Ultimately, "the burden of establishing a *prima facie* case is not onerous." Burdine, 450 U.S. at 253, 101 S.Ct. at 1094. Though Alexander County presented evidence that Terry Fox was not meeting its expectations, Terry Fox countered with evidence that is at least sufficient to create a question of fact that Alexander County's expectations were indeed "legitimate." Accordingly, this court finds that Fox has met the "relatively easy test" of making out a *prima facie* case and will proceed to the second step of the McDonnell-Douglas framework. See e.g., Young v. Lehman, 748 F2d 194, 197 (4th Cir. 1984) ("In Burdine, however, the Supreme Court indicated that the burden of establishing a *prima facie* case is not a heavy one.").

### B. Defendant's Legitimate, Non-Discriminatory Reasons

Having found that plaintiff has satisfied the burden of establishing a *prima facie* case, this court must now consider whether Alexander County has put forward legitimate, non-discriminatory reasons for demoting Fox. Importantly, Alexander County's burden at this stage is only one of production, not persuasion, and does not involve a credibility assessment. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513-14 (2006). Moreover, Alexander County is not required to persuade this court that the proffered reasons did indeed form the actual motivation for demoting Fox. See Burdine, 450 U.S. at 254. Rather, Alexander County must simply articulate a justification that is "legally sufficient to justify a judgment" in its favor. Id. at 255.

Alexander County claims that plaintiff was demoted for violating the time en-route policy, the time on-scene policy, and for failing to perform his duties as a supervisor on the

Winter Haven Drive call.  In his letter to Terry Fox, Russell Greene stated that Greene's demotion was due to "unacceptable personal conduct and poor job performance under Alexander County's Personal Policy Article X."  Pl.'s Ex. 36.  Based on the reasons articulated by Alexander County, this court finds that Defendant has met the burden of presenting a legitimate, non-discriminatory reason for its employment action.  See Bourdine, 450 U.S. at 259, 101 S.Ct. at 1096-97 ("job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for adverse employment actions").  Based on the reasons stated in the letter Alexander County delivered to Terry Fox, Alexander county has met its low burden of production by articulating legitimate, non-discriminatory reasons for Fox's demotion.

### C. Pretext Inquiry

The Court must now determine whether Fox has presented sufficient evidence to create a genuine issue of material fact regarding Alexander County's proffered reason for demoting Fox .

Because Alexander County offered a legitimate nondiscriminatory reason for its decision, Fox must now come forward with sufficient evidence from which a rational fact finder could conclude that the proffered reason was a pretextual and designed to mask discrimination. See Tarver v. Winter, 535 F. Supp. 2d 565, 570 (E.D.N.C. 2008). "This burden now merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Fox can satisfy this burden by putting forward evidence sufficiently probative of age discrimination or by showing that the alleged non-discriminatory explanation is unworthy of credence. Id. "In the final steps of this analysis, the trier of facts 'rejection [or disbelief] of the [employer's] proffered reasons [for its actions] will permit the trier ... to infer the ultimate act of intentional discrimination.'" Wilson v. Phoenix Specialty Mfg. Co., 513 F.3d 378, 387 (4th Cir. 2008)

quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Ultimately, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves</u>, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000).

As stated above, the alleged non-discriminatory reasons given by Alexander County for demoting Fox include: (1) violating the time en-route policy, (2) violating the time on-scene policy, and (3) failing to perform supervisory duties on the Winter Haven Drive call. Alexander County labeled such failures "unacceptable personal conduct and poor job performance under Alexander County's Personnel Policy Article X" in the demotion letter it gave to Terry Fox. Pl.'s Ex. 36.

Here, looking at the totality of the circumstances, there is ample evidence from which a reasonable juror could conclude that, in the words of the <u>Reeves</u> Court, Alexander County's "asserted justification is false." In determining whether an employer's justification is pretextual, the Court may consider similar facts to those it considered in adjudicating the prima facie case. <u>See</u> <u>Holland v. Wash. Homes, Inc.</u>, 487 F.3d 208, 219 (4th Cir. 2007) (holding a plaintiff failed to show pretext "for the same reasons that he could not make that showing with respect to his discriminatory discharge claim"). Fox points to at least thirteen facts from which a jury could infer that Alexander County's reasons for demoting Fox were pretextual. This court finds that at least three of the arguments put forward by Fox would allow a reasonable juror to conclude that the justifications given by Alexander County were pretextual.

A court may consider comments that provide circumstantial evidence of discriminatory animus, in combination with other evidence. <u>See</u> <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d

598, 608 (4th Cir. 1999); see also Straughn v. Delta Air Lines, Inc., 260 F.3d 23, 36 (1st Cir. 2001) (noting that the probativeness of comments made by an employer are lessened if not made by the employer making the decision or are remote in time); Warren v. Fort Lincoln Cemetery, Inc., No. 00-419, 2001 WL 743199, *3 (D. Md. June 26, 2001) (holding though employer's racial slurs were not direct evidence of discriminatory intent, the employer's "conduct may still support Plaintiff's case as circumstantial evidence of discriminatory animus" by employer).

Here, when Greene gave Fox the demotion letter, Greene allegedly said "what's contained in this letter is not what this is about but what I need you to do is sit back, be quiet [sic], and be professional." Pl.'s Ex. 33 ¶16. Jeff Sigmon, the other EMS Supervisor present at the time of the statement was made, and Fox both interpreted the statement to mean that the reasons for the demotion stated in the letter were not the real reasons for Fox's demotion. Likewise, a reasonable juror, upon hearing such evidence, could conclude that the reasons stated in the letter were merely pretextual. Such evidence provides strong support for Fox's claim of pretext because it was made close in time to the employment decision and made by a party that was primarily responsible for the decision to demote Fox. See e.g., Evans v. City of Houston, 246 F.3d 344, 356 (5th Cir 2001) ("[T]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment.").

A reasonable juror could also conclude that the asserted justifications for demoting Fox were pretextual because other EMS Supervisors were not disciplined for excessive en-route times. An employer's disparate treatment of employees in response to behavior that legitimately offends the employer can serve as evidence of discriminatory animus. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283, 96 S.Ct. 2574, 49 L.E.2d 493 (1976). In order to be considered a similarly situated employee, it is important that the employee being compared to

18

the plaintiff be similarly situated in all relevant aspects. See JDS Uniphrase v. Jennings, 473 F.

Supp. 2d 705, 712 (E.D. Va. 2007). A court should ask "whether a prudent person, looking

objectively at the incidents, would think them roughly equivalent and the protagonists similarly

situated. While an exact correlation is not necessary, the proponent must demonstrate that the

cases are fair congeners." Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 752 (1st Cir.

1996).

A reasonable juror could infer pretext when comparing the case of Jeff Sigmon to that of

Fox. Jeff Sigmon, another EMS Supervisor that was only thirty-five years old, gave Greene a

handwritten document two months before Fox was demoted. The document showed 26 instances

in the month of February alone where Sigmon's crew had excessive en-route times, including

calls responded to by teams led by Sigmon. Greene. Dep. Vol. II 87:19-89:7; Pl.'s Ex. 33 ¶17.

Despite numerous violations of the en-route policy, no disciplinary action was taken against

Sigmon for these violations of the en-route policy. In contrast, Fox was demoted based on one

violation of the en-route policy, which a reasonable juror could conclude he violated by only

seven seconds. In light of the differences between how Alexander County treated Sigmon's

violation of the en-route policy and Fox's violation, Alexander County's justification for

demoting Fox for an en-route violation is less than forceful. A reasonable juror, therefore, could

conclude that Alexander County had one standard for Fox and another standard for younger

employees such as Sigmon.

Finally, a reasonable juror examining the last eight years of disciplinary records for

Alexander County EMS could further infer discriminatory animus on the part of Alexander

County EMS. Again, the thrust of Fox's claim regarding these records is that such evidence

shows that Alexander County is administering its expectations in a discriminatory fashion. See

e.g., Perkins, 78 F.3d at 751 ("[T]he proponent of the evidence must show that the individuals with whom he seeks to be compared have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

To support this claim Fox points out that between 2000 and 2008, the only four employees Alexander County EMS demoted were over forty and the only employee receiving an unpaid suspension was also over forty. Pl.'s Ex. 66. Conversely, the three employees who received nothing more than written warnings were all under age forty. Pl.'s Ex. 66. A reasonable juror viewing this chart, in addition to the other evidence presented by Fox, could view this as additional evidence from which to infer Alexander County's discriminatory intent.

For the reasons set forth above, the Court concludes that Fox has demonstrated that a genuine factual dispute exists as to whether the proffered reasons for Fox's demotion were false. This Court, therefore, will **DENY** Defendant's motion for summary judgment as to Plaintiff's first claim for relief alleging a violation of the ADEA.

### C. Plaintiff's State Law Claim and ERISA Claim

Because there is a genuine issue of fact which precludes a grant of summary judgment on Fox's ADEA claim, the Court must also deny Alexander County's motion with respect to Fox's state law claim under N.C. Gen. Stat. § 143-422.2. See Alderman v. Inman Enterprises, Inc., 201 F. Supp. 2d 532, 546 (M.D.N.C. 2002)("In determining the parameters of an age discrimination claim under N.C. Gen. Stat. § 143-422.2, the Court should apply the same standards that apply under the ADEA."), aff'd, 58 Fed. App'x. 47 (4th Cir. 2003).

Fox, however, has failed to present this Court with any argument as to why his fourth claim for relief, a violation of ERISA, should survive summary judgment. Alexander County

argues that in order to bring a successful claim under ERISA, a plaintiff must show that a defendant had the specific intent to interfere with the plaintiff's pension rights under Section 510 of ERISA, <u>Conkwright v. Westinghouse Electric Corp.</u>, 933 F.3d 231, 239 (4th Cir. 1991), and that Fox has failed to make such an allegation. This Court agrees. <u>Id.</u> ("As a number of courts have recognized, it is not sufficient for an employee to allege lost opportunity to accrue additional benefits as evidence of the employer's specific intent to violate ERISA; rather, a plaintiff must adduce facts, which if taken as true, could enable a jury to identify unlawful intent from the other various reasons why an employer might have terminated plaintiff, and to conclude that the employer harbored the requisite unlawful intent."). Therefore, this Court will **GRANT** summary judgment to Defendant as to Plaintiff's fourth cause of action, alleging a violation of ERISA.

### III. CONCLUSION

**IT IS THEREFORE ORDERED**, that Defendant's Motion for Summary Judgment (Document #32), filed April 6, 2009 is hereby:

(1) **DENIED** as to Plaintiff's first claim for relief: ADEA violation alleging that Plaintiff was unlawfully demoted because of his age on April 18, 2006; and

(2) **DENIED** as to Plaintiff's eighth claim for relief: violation of the North Carolina Equal Employment Practices Act ("NCEEPA"); and

(3) **GRANTED** as to Plaintiff's fourth claim for relief: violation of ERISA as a result of the Plaintiff's demotion.

**IT IS FURTHER ORDERED**, the Court finding the motion unnecessary to the resolution of Defendant's Motion for Summary Judgment, that Plaintiff's Motion for Leave to File Surreply (Document #42), filed June 4, 2009, is hereby **DENIED** as moot**.**

Signed: December 22, 2010

Richard L. Voorhees
United States District Judge